UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL WESTLY GIVENS,<br><br>      Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>      Defendant. | CASE NO. C15-5043-RBL-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Michael Westly Givens proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied an application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1961.[1]  He has a GED and previously worked as a drywall

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE - 1

applicator. (AR 27, 40-41.)

Plaintiff protectively filed an application for DIB on December 6, 2011, alleging disability beginning January 28, 2011. (*See* AR 18.)   Plaintiff's application was denied at the initial level and on reconsideration.

On August 23, 2013, ALJ Rebekah Ross held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 34-63.)  On September 9, 2013, the ALJ issued a decision finding plaintiff not disabled from January 28, 2011 through the date of the decision. (AR 18-28.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on November 19, 2014 (AR 1-5), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's degenerative disc disease and right shoulder strain and impingement severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

REPORT AND RECOMMENDATION
PAGE - 2

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform light work as defined in 20 C.F.R. § 404.1527(b), except that he must be allowed to alternate between sitting and standing every thirty minutes.  She also found plaintiff can occasionally kneel, crouch, and crawl; never climber ropes, ladders, or scaffolds; must avoid concentrated exposure to vibrations and hazards, such as machinery and heights, and even moderate exposure to fumes, odors, dusts, and gases; can occasionally reach but cannot perform overhead work with his right upper extremity; and can perform positions that do not require him to work on uneven surfaces and that allow him to be off-task five percent of the time.  With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as an injection mold machine operator, molding machine offbearer, and parking lot attendant.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954

(9th Cir. 2002).

Plaintiff argues the ALJ erred in affording only some weight to the opinions of two-time examining physician Dr. Ryan Halpin, thereby implicating the RFC assessment. He also argues the ALJ did not adequately assess his credibility and erred at step five. Plaintiff requests remand for further administrative proceedings. The Commissioner argues that the ALJ's decision has the support of substantial evidence and should be affirmed.

### Physician's Opinions

In an October 25, 2011 examination, Dr. Halpin noted weakness in plaintiff's right shoulder, a "very effort-dependent examination" in his upper and lower extremities, diminished sensation in his calves, significant tenderness in his lumbar spine, and that plaintiff leaned slightly forward when walking and had difficulty ambulating on his heels and toes and tandem walking. (AR 277.) Dr. Halpin opined that, in terms of his lumbar spine, plaintiff "could work with activity restrictions specifically lifting restrictions[,]" and referred him to an MRI. (*Id.*) In a form relating to plaintiff's Labor and Industries claim,[2] Dr. Halpin found plaintiff was not restricted in sitting, could frequently (for three to six hours) stand/walk, seldom (up to one hour) reach and work overhead on the right and occasionally (one to three hours) reach and work overhead on the left, occasionally lift ten pounds, and should avoid heavy lifting until an MRI was completed. (AR 584.)

On November 22, 2011, Dr. Halpin found plaintiff was ambulating independently, with good strength throughout and some tenderness to palpation in his lumbar spine region, and reviewed the MRI results showing degenerative disc disease of the lumbar spine, but no

---

[2] Plaintiff suffered an industrial injury involving his back and shoulder in December 2010. (*See* AR 22.)

REPORT AND RECOMMENDATION
PAGE - 4

significant central or foraminal stenosis. (AR 275.) Dr. Halpin opined: "[H]e has reached maximum medical improvement for his back. I feel that from his back standpoint, he could return to work with modified duty and avoid heavy lifting." (*Id*.) He assessed the same limitations described above, adding that plaintiff should complete a course of physical therapy, that his progress was slower than expected, and surgery was not indicated. (AR 750.)

The ALJ gave "some weight" to Dr. Halpin's opinion "because his limitations on the claimant's ability to sit, stand and walk are consistent with the claimant's testimony and the objective findings in the record." (AR 25.) He further stated: "However, his opinion was provided shortly after the claimant's shoulder surgery and represents his functional abilities while he was still recovering. The actual evidence in the claimant's file shows he is able to consistently lift much more than 10 pounds." (*Id*.)

Plaintiff denies the sufficiency of the reasons for assigning only some weight to the opinions of Dr. Halpin, noting he had his first shoulder surgery on August 16, 2011 (AR 376), more than two and three months prior to Dr. Halpin's opinions. He states that he continued to experience his shoulder-related limitations into 2012 and 2013, even after a second shoulder surgery on August 16, 2012 (AR 465), and cites to medical records and opinions as supportive of this contention (*see* Dkt. 13 at 6-11). Plaintiff avers Dr. Halpin's opinions were consistent with the record as a whole and that the ALJ's error was harmful given that the assessed lifting and carrying restrictions indicate a capacity for no more than sedentary work and support a finding of disability. (*See id*. at 11.) The Court, however, finds no error established.

The record in this case contains multiple opinions from examining physicians and the opinions of a non-examining physician. The opinions of examining physicians are, as a general matter, entitled to more weight than to the opinions of nonexamining physicians. *Lester v.*

REPORT AND RECOMMENDATION
PAGE - 5

*Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Because the physicians' opinions were contradictory, the ALJ could not reject Dr. Halpin's opinions without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  While the opinions of the nonexamining physician could not alone constitute substantial evidence justifying the rejection of the examining physicians' opinions, *id*. at 830, his findings could "amount to substantial evidence, so long as other evidence in the record support[ed] those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  *See also Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld).[3]

"[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  *Accord Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Thomas*, 278 F.3d at 956-57.  When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The ALJ here reasonably assigned significant weight to the opinions of independent medical examiners Dr. Kenneth Ritter, Dr. St. Elmo Newton III, and Dr. Michael Weinstein. (AR 25.)  These physicians examined plaintiff in May and June of 2013, almost a year after plaintiff's second shoulder surgery and with consideration of the records from Dr. Halpin. (AR

---

[3] The record also contains opinions from a physician's assistant and physical therapist.  Although the weight assigned this opinion evidence is not in dispute, the opinions of these "other sources" are entitled to less weight than the opinions of the physicians. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); 20 C.F.R. § 404.1513(a) and (d); Social Security Ruling 06-03p.  *See also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ may discount the evidence from other sources by providing reasons germane to each source).

REPORT AND RECOMMENDATION
PAGE - 6

1001-10 and AR 983-99.)  Dr. Ritter found plaintiff's condition fixed and stable, and noted positive Waddell's signs and complaints "out of proportion" to the findings on examination. (AR 1009.) Drs. Newton and Weinstein observed that plaintiff was able to walk on his heels and toes without difficulty and had either good or only partially decreased range of motion in all areas tested, concluded no additional treatment would be curative, and assessed a sixteen percent impairment of his right upper extremity.  (AR 989-95.)  They took note of "extreme pain behavior" throughout the examination.  (AR 994; *see also* AR 989 ("As he describes his injury, there is lots of hyperbole.  He is able to get out of his chair and reenact what happened on the day of his injury however."))  The ALJ also reasonably assigned significant weight to the opinions of nonexamining State agency consultant Dr. Norman Staley, who found plaintiff capable of light work and frequent overhead reaching with his right upper extremity in May 2012, before plaintiff's second surgery, but with consideration of Dr. Halpin's records.  (AR 24, 82-86.)

The ALJ, moreover, did not wholly reject the opinions of Dr. Halpin and, instead, assigned them some weight given consistency with plaintiff's testimony and objective findings in the record.  The ALJ had, for example, pointed to plaintiff's ability to perform household chores, sweep and take out the garbage, feed and walk his pets, prepare meals for himself, go outside two to four times a day, and drive a car without difficulty, and pointed to evidence of his "excellent progress" in physical therapy, "ability to recover quickly" after both surgeries, and demonstration of full range of motion in both his upper and lower extremities.  (AR 24.)

The ALJ further provided specific and legitimate reasons for declining to adopt all of the specific limitations assessed by Dr. Halpin by pointing to the fact that the opinions were rendered shortly after a shoulder surgery and that the record showed plaintiff's ability to consistently lift more than the ten-pound limitation Dr. Halpin assessed.  *See Tommasetti v. Astrue*, 533 F.3d

REPORT AND RECOMMENDATION
PAGE - 7

1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions), and *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.")  For example, examining physician Dr. Dagher, in January 2012, found plaintiff restricted to overhead reaching occasionally with up to a twenty-pound limit and to lifting and carrying up to fifty pounds on an occasional basis. (AR 704.)  Physical Therapist Lisa Lang, in March 2012, assessed plaintiff as able to lift fifteen pounds occasionally (AR 26, 451), while, in physical therapy with Joseph Zygar in the following months, plaintiff was lifting over twenty pounds, performing shoulder shrugs over fifty pounds, "doing extremely well reaching out[,]" walking up to ninety minutes at a time on a treadmill, and working out for two hours at a time. (*See* AR 430-40.)

By January 2013, following his second surgery, physical therapy notes showed plaintiff was able to lift at least thirty-five pounds and ninety pounds while doing shoulder shrugs. (AR 919.)  In February 2013 examinations, physician's assistant Lori Caldwell noted "excellent" range of motion in his right shoulder and released him to "light duty only, computer type work." (AR 1063-64.)  Additionally, Dr. Yoshihiro Yamomoto, in two examinations in March 2013, noted "giveaway type" weakness in his upper extremity and "pain behavior and Waddell sign[s]." (AR 497, 1021.)[4]

Finally, plaintiff does not establish that the opinions of Dr. Halpin necessarily equate to a

---

[4] It should be noted that the discussion above includes only some of the evidence relied upon by the ALJ in reaching her conclusions and that the ALJ did not accept all of the opinion evidence from the medical sources discussed. (*See*, *e.g.*, AR 25 (assigning some weight to Dr. Dagher's opinions, but noting the opinions were provided while plaintiff was still recovering from surgery and did not reflect his actual abilities) and AR 26 (assigning little weight to the opinion of Dr. Yamamoto that plaintiff is unable to tolerate vocational therapy or light duty work due to complaints of pain based on the lack of supportive objective evidence and apparent reliance on plaintiff's unreliable subjective complaints of pain).) Plaintiff, moreover, limits his challenge in this action to the weight afforded the opinions of Dr. Halpin.

REPORT AND RECOMMENDATION
PAGE - 8

limitation to sedentary work. Dr. Halpin found plaintiff could sit constantly, stand and walk for up to six hours, and could lift, carry, push/pull up to ten pounds occasionally and twenty pounds seldom (up to one hour). (AR 584, 750.) He found no limitations in working with a keyboard or in flexing/extending wrists, forceful grasping, fine manipulation, or operating foot controls. (*Id*.) While Social Security regulations define light work as involving lifting no more than twenty pounds, with frequent lifting and carrying up to ten pounds, they also clarify: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b). *See also* Social Security Ruling (SSR) 83-14 ("The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday.") and SSR 83-10 ("Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work[.]").

In sum, while plaintiff points to other evidence in the record as supporting his position, he fails to demonstrate the ALJ's interpretation of the evidence was not rational. *See Morgan*, 169 F.3d at 599. Plaintiff, moreover, insufficiently and in significant part relies on evidence predating his second surgery (Dkt. 13 at 5-7) and/or the later examinations and contradictory opinions of Drs. Ritter, Newton, and Weinstein (*id*. at 7-9). The ALJ's reasonable interpretation the medical opinion evidence and plaintiff's RFC should not be disturbed.

/ / /

Credibility

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ here found plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms not entirely credible. Contrary to plaintiff's contention, the ALJ provided several specific, clear, and convincing reasons in support of that conclusion.

The ALJ reasonably found the objective medical evidence did not support plaintiff's allegations as to the degree of severity of his impairments and pointed to contradictory evidence in the record. (AR 22-24.) *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."), and *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") As with the opinions of Dr. Halpin, plaintiff offers an alternative reading of the evidence, but does not demonstrate the ALJ's interpretation was not reasonable or rational.

The ALJ's description of the medical evidence reflected his additional consideration of plaintiff's pain behavior and "extreme pain behavior," positive Waddell's signs, and complaints out of proportion to findings on examination. (AR 24, 26.) The ALJ, as such, properly considered the evidence of a tendency to exaggerate, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), and failure "to give maximum or consistent effort" on examination, *Thomas*, 278 F.3d at 959 (claimant's "efforts to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility.")[5]

The ALJ also considered evidence of plaintiff's improvement with treatment and his "excellent progress" in physical therapy, ability to recover quickly from his surgeries, and demonstration of full range of motion. (AR 23-24.) Plaintiff maintains his long and consistent treatment history should be considered as a positive factor in relation to his credibility. *See* SSR 96-7p (persistent attempts to obtain relief of pain or other symptoms "may be a strong indication that the symptoms are a source of distress . . . and generally lend support to an individual's allegations of intense and persistent symptoms.") However, while perhaps true, the ALJ was also entitled to consider the evidence of plaintiff's improvement, including his favorable response to physical therapy, as a basis for finding his testimony as to the degree of his impairment not fully credible. *See*, *e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (favorable response to conservative treatment, such as physical therapy, undermines reports of disabling nature of pain).

---

[5] As the Commissioner observes, plaintiff also "demonstrated self-limiting behaviors" and failed to demonstrate "full and consistent effort" in an April 27, 2012 evaluation relating to his Labor and Industries claim. (AR 849-50 (describing plaintiff as using "abnormal/awkward holds" and "awkward movement patterns" that were "more likely to exacerbate or cause injury" and were "not necessarily as a result of the accepted diagnosis")). This observation does not constitute an improper post hoc rationalization given that it is offered not "to invent a new ground of decision[,]" but to provide "additional support for the Commissioner's and the ALJ's position." *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006).

REPORT AND RECOMMENDATION
PAGE - 11

Finally, the ALJ pointed to plaintiff's activities, *see supra* at 7, as supporting the RFC assessed. The ALJ, as such, properly considered evidence of activities contradicting plaintiff's testimony as to the degree of his impairment as an additional basis for the adverse credibility decision. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For this reason, and for the reasons stated above, plaintiff does not demonstrate error in the assessment of his credibility.

Step Five

In his final assignment of error, plaintiff argues the VE failed to account for an inconsistency between the jobs identified at step five and the RFC assessment and hypothetical question asked at hearing. He notes that, while the RFC and hypothetical included limitations to only occasionally reaching with the right upper extremity and an inability to perform overhead work with the right upper extremity, the jobs of injection mold machine operator, molding machine offbearer, and parking lot attendant are all defined as requiring frequent reaching. *See* U.S. Dep't of Labor, Selected Characteristics of Occupations (SCO) Defined in the Revised Dictionary of Occupational Titles (DOT) Appx. C (1993), found at 1991 WL 683482, 1991 WL 683488, and 1991 WL 687865. He maintains the existence of a facial discrepancy between the VE's testimony and the DOT,[6] and reversible error given the ALJ's reliance on the VE's testimony without any explanation or alternative basis to explain the discrepancy. Again, however, the Court finds no basis for remand established.

The ALJ bears the burden at step five to provide evidence demonstrating that "other work exists in significant numbers in the national economy that [a claimant] can do, given [his RFC] and vocational factors." C.F.R. § 404.1560(c)(2). In so doing, "[a]n ALJ may take administrative notice of any reliable job information, including information provided by a VE."

---

[6] The information as to reaching limitations is contained in the SCO, a companion publication to the DOT.

REPORT AND RECOMMENDATION
PAGE - 12

*Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). "A VE's recognized expertise provides the necessary foundation for his or her testimony." *Id*.

While Social Security regulations "recognize [VE's] and several published sources other than the DOT as authoritative[,]" the DOT raises a rebuttable presumption as to job classification. *Johnson*, 60 F.3d at 1435-36. Pursuant to SSR 00-4p:

> When there is an apparent unresolved conflict between VE or VS [(vocational specialist)] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

The ALJ, as such, has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). As stated by the Ninth Circuit Court of Appeals: "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435-36 (VE testified specifically about the characteristics of local jobs and found their characteristics to be sedentary, despite DOT classification as light work). "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the

expert's testimony." *Light*, 119 F.3d at 794 (internal citations omitted).

In this case, the ALJ asked the VE: "[I]f you should give an opinion which conflicts with information in the [DOT], please advise us of the conflict and basis for your opinion." (AR 57.) She proffered a hypothetical question allowing for no overhead reaching with the right upper extremity and only occasional reaching with the right overhead extremity, and clarified: "And the right upper extremity is the dominant extremity." (AR 59-60.) The VE, in response to that hypothetical, testified plaintiff could perform the jobs identified by the ALJ at step five. (AR 60-61.) The ALJ determined the VE's testimony was consistent with the information in the DOT. (AR 28.) The ALJ, as such, met her obligations in relation to the VE's testimony and the DOT. *See Nicholson v. Astrue*, No. 08-4016, 2009 U.S. App. LEXIS 18761 at *14 (7th Cir. Aug. 18, 2009) ("The ALJ [performed the affirmative duty] by asking the VE specifically to point out any inconsistencies between the VE's testimony and the DOT. The VE did not mention any such inconsistencies, and Nicholson's counsel never identified any. The ALJ did all that [SSR] 00-4p required.") (citations omitted).

Nor does plaintiff demonstrate an "apparent unresolved conflict" between the VE's testimony and the DOT implicating the requirements of SSR 00-4p. "Reaching" means "extending the hands and arms in any direction." SSR 85-15; *accord* SCO, Appx. C. The DOT does not, however, contemplate how often an individual must reach overhead, reach bilaterally, and/or reach with a dominant or nondominant hand. The VE was, moreover, permitted to utilize his expertise to identify positions in which a claimant with different types of reaching limitations could perform. *See generally Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) ("The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.").

In this case, the RFC limited plaintiff only in relation to his right upper extremity. The VE was informed as to that limitation and the fact that it involved plaintiff's dominant hand, and testified an individual so limited could perform the jobs identified at step five. Plaintiff presents no support for a contention that any of those jobs require bilateral reaching and/or reaching with a dominant hand. He, as such, fails to demonstrate an apparent unresolved conflict with the DOT. *See*, *e.g.*, *Mendoza v. Colvin*, No. 14-cv-00825, 2015 U.S. Dist. LEXIS 99034 at *6-10 (D. Nev. Jul. 29, 2015) (noting the majority of district courts in the Ninth Circuit to consider the issue have found a DOT job description requiring reaching does not conflict with a claimant's inability to fully reach with one arm or hand unless the description requires bilateral reaching; concluding any conflict between a limitation to occasional overhead reaching with one arm and a DOT definition requiring frequent reaching was not "sufficiently apparent to trigger" SSR 00-4p requirement); *Palomares v. Astrue*, 887 F.Supp.2d 906, 920 (N.D. Cal. 2012) (where the VE testified his answers were consistent with the DOT and specifically considered the evidence indicating the claimant had reaching and lifting limitations on his left side only, there was no conflict between the VE's testimony that a person so limited could perform a DOT job that required "constant reaching" because "the DOT does not require constant reaching with both arms"). *See also Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (VE's testimony the claimant could work as cashier or ticket seller notwithstanding amputation of his non-dominant left hand was not inconsistent with the DOT's requirement of occasional or frequent handling and fingering for those jobs because the DOT does not require bilateral manual dexterity).[7]

---

[7] Plaintiff also argues the position of injection mold machine operator requires frequent exposure to environmental conditions and, therefore, conflicts with the RFC limitation to avoidance of even moderate exposure to fumes, odors, dusts, and gases. (Dkt. 13 at 16.) However, as the Commissioner observes, the DOT/SCO reflects that that job does not require exposure to weather, extreme cold or heat,

REPORT AND RECOMMENDATION
PAGE - 15

The Court also finds relevant plaintiff's failure to question the VE at hearing as to any potential conflict associated with the reaching limitations.  "[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal[,]" and failure to comply with this rule is excused only "when necessary to avoid a manifest injustice[.]"  *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).  Plaintiff notes that he did raise the issue of a conflict based on the reaching limitations in the Appeals Council (AR 254-55), and denies he was required to raise the issue before the ALJ in order to preserve it for appeal.  He points to the non-adversarial nature of Social Security disability proceedings and to the Supreme Court's ruling, after *Meanel*, that a Social Security claimant does not waive judicial review by failing to present an issue to the Appeals Council.  *Sims v. Apfel*, 530 U.S. 103, 107, 112 (2000).  However, the Supreme Court in *Sims* specifically deferred ruling on the issue of exhaustion before the ALJ, *see id*. ("Whether a claimant must exhaust issues before the ALJ is not before us."), and the Ninth Circuit has continued to apply *Meanel*, *see*, *e.g.*, *Phillips v. Colvin*, No. 13-36071, 2015 U.S. App. LEXIS 2308 at *2 (9th Cir. Feb. 13, 2015).  *See also Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) ("The impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process.  This case is a perfect illustration. If the ALJ had heard the objection now made and agreed with it, he could easily have considered and expressly found that there were other jobs in the economy available to Mills. Here, the ALJ stopped at step four of the five-step process when he found that Mills could return to her old jobs; but if the prior jobs had been removed from the picture he would have proceeded to step

---

wet or humid conditions, vibration, atmospheric conditions, moving parts, toxic caustic chemicals, or "Other Env. Cond." 1991 WL 68342.  Plaintiff does not demonstrate any conflict with the DOT.

five to consider whether there were other jobs in the economy available to her.")

In any event, even assuming the argument was not waived, plaintiff's failure to raise the issue at hearing undermines his contention as to the existence of a conflict apparent enough to necessitate clarification.  Counsel for plaintiff did ask the VE questions at hearing, including whether a limitation to only frequent handling and fingering would allow performance of the identified jobs, but did not make any inquiry as to the reaching limitations.  (AR 62.)  This omission provides further support for the absence of an obvious incompatibility between the DOT and the VE's testimony.  *Cf. Carey*, 230 F.3d at 146-47 ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").

In sum, plaintiff fails to identify an apparent unresolved conflict necessitating further clarification by the VE and/or ALJ, and the VE's unchallenged testimony in response to the hypothetical provided a sufficient basis upon which the ALJ could rely in reaching her step five conclusion.  Plaintiff, therefore, fails to demonstrate any error in the ALJ's decision at step five.

## CONCLUSION

For the reasons set forth above, this matter should be AFFIRMED.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions

REPORT AND RECOMMENDATION
PAGE - 17

calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 25, 2015**.

DATED this 10th day of September, 2015.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 18